Betty J. VUKONICH, Plaintiff-Appellant,

v.

CIVIL SERVICE COMMISSION and the
United States of America,
Defendants-Appellees.

No. 77–1226.

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1978.

Paul D. Cooper of Yegge, Hall & Evans, Denver, Colo., for plaintiff-appellant.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo. (Cathlin Donnell, Interim U. S. Atty., Denver, Colo., on brief), for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Betty Vukonich was hired as a clerk typist, General Schedule (GS)–4, with the Environmental Protection Agency (EPA) in April 1971. In October of that year she was promoted to GS–5 after her Federal Civil Service Examination results demonstrated eligibility for both grades GS–5 and GS–7. In November 1972 she was promoted to GS–7. In March 1974, the Department of Health, Education and Welfare (HEW) announced an opening for a budget and accounting officer at a GS–9 grade. The work was of the type Vukonich was performing at a GS–7. She applied for the position and was ultimately chosen for the job. She was informed of her selection and arrangements were made for her to transfer to HEW and start work on May 13, 1974. However, her expectations were dashed on May 9 when she was informed, moments before her "farewell party," that her transfer and promotion would not occur as scheduled. This change resulted from HEW becoming aware that the Civil Service Commission (CSC) questioned her qualifications for the HEW position.

She was ultimately informed of CSC's decision that she was not qualified for the GS–9 grade. She never began work for HEW and no Standard Form 50, which documents transfers, promotions, and the

like, was ever filed in connection with the GS–9 position.

The reasons for this last minute change were rooted in a running dispute between the CSC and EPA. CSC had been attempting to compel EPA to remove Vukonich from her GS–7 grade because CSC claimed she held it illegally. The illegality in CSC's view was that some nine months of pre-Civil Service experience was improperly credited by EPA in granting the GS–5 grade. It was this same nine months of experience which formed the basis of CSC's determination that she was unqualified for the GS–9 appointment. By the time Vukonich had continued as a GS–7 long enough to make up for the disallowed nine months of pre-Civil Service experience, thus qualifying her for GS–9 consideration, the GS–9 position was filled. She remained in her GS–7 position up to the time of trial. There was never any question that Vukonich performed her work satisfactorily at all grades.

■ Vukonich demanded a hearing in connection with the denial of the GS–9 appointment, but it was denied. CSC's determination of her lack of qualifications was reviewed administratively but without an opportunity for hearing. This suit was then commenced in the district court.[1] The substantive question before us is whether Vukonich was entitled to a hearing in connection with the refusal to proceed with the GS–9 appointment. Disallowing the nine month pre-employment experience by removing her from the GS–5 or GS–7 appointments would constitute what is known in Civil Service terminology as "adverse action" and would require notice and hearing. The question here is whether the CSC may disallow that experience in connection with a proposed transfer and advancement without that same notice and hearing.

■ Vukonich's first claim is that she was legally appointed to the GS–9 position and that the action in question constituted removal from that position. We agree with the trial court's rejection of this claim.[2] In the paper-laden world of Civil Service, an appointment becomes effective only after a Standard Form 50, "Notice of Personnel Action," has been completed. That was not done in this case. The reason for the reliance of CSC on Form 50 is set out in the *Federal Personnel Manual.* It provides:

The Commission requires the preparation of notifications of personnel actions primarily to provide basic documentation of a person's Federal employment, to notify the employee of the personnel action, and to provide basic records which permit agencies and the Commission:

(1) To determine the status and rights of employees as well as their eligibilities for promotion, transfer, reemployment, and other personnel actions.

(2) To show whether personnel actions authorized or ordered have been effected, and *whether actions effected have been authorized.*

. . .

The notifications of personnel actions constitute the employee's official record of Federal employment. *They are the basic source documents by which his rights and benefits under the laws and regulations pertaining to Federal service are determined.* . . .

---

**1.** The government challenged below the jurisdiction of the Federal Courts under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976), as alleged in Vukonich's complaint. Subsequent to the trial court's decision in this case, the Supreme Court, in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), held that the Administrative Procedure Act does not afford independent subject matter jurisdiction for federal judicial review of agency actions. Although not alleged in the complaint, 28 U.S.C. § 1331 (1976) provides an adequate basis for jurisdiction in this case. The failure to allege this alternate basis for jurisdiction is not fatal where the complaint revealed a basis for § 1331 jurisdiction. *Harary v. Blumenthal,* 555 F.2d 1113, 1115 n.1 (2d Cir. 1977); 5 C. Wright and A. Miller, *Federal Practice and Procedure,* Civil §§ 1206, 1209 (1969).

**2.** Our conclusion that Vukonich had not been effectively appointed to the GS–9 position makes it unnecessary to reach her claim that the position was taken away from her without due process of law in violation of the Fifth Amendment.

United States Civil Service Commission, *Federal Personnel Manual*, at 296–5 (1969) (emphasis added).

Since the appointment was not effective, the question then becomes whether the act of disallowing the nine months of pre-employment experience, in connection with the GS–9 application, constituted "adverse action" entitling Vukonich to the more elaborate hearing proceedings she demanded. If the action was by an agency, such as EPA or HEW, the adverse action hearing proceedings apply only in the case of removals, suspensions, furloughs without pay, and reduction in rank or pay. 5 C.F.R. § 752.101 (1978). EPA took no action and HEW's action constituted at most withdrawal of an offer to employ, which does not come within any of the enumerated categories. A CSC decision becomes an "adverse action" only when CSC instructs an agency to remove or take other disciplinary action against an employee. 5 C.F.R. § 754.101 (1978). This section might have been applicable to CSC's unsuccessful demands to EPA that Vukonich be removed, but those earlier directions are not involved in this case. CSC's making an independent determination of Vukonich's qualifications based on employment history does not constitute disciplinary action within the section. Since none of the actions taken constituted "adverse action" under CSC regulations, the trial court was correct in affirming CSC's denial of the hearing demanded.

Finally, we do not believe the record compelled a finding that CSC was estopped from making an independent determination concerning pre-employment qualifications in connection with the GS–9 appointment.

AFFIRMED.